Citation Nr: 1744023 
Decision Date: 09/27/17 Archive Date: 10/10/17

DOCKET NO. 11-06 227 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in 
Phoenix, Arizona


THE ISSUES

1. Whether new and material evidence has been submitted to reopen a claim for service connection for degenerative joint disease of the cervical spine, to include as secondary to service-connected disease or injury.

2. Entitlement to service connection for degenerative joint disease of the cervical spine, to include as secondary to service-connected disease or injury.

3. Whether new and material evidence has been submitted to reopen a claim for service connection for degenerative joint disease of the lumbar spine, to include as secondary to service-connected disease or injury.

4. Entitlement to service connection for residuals of a right shoulder injury, to include as secondary to service-connected disease or injury.

5. Entitlement to a disability rating in excess of 20 percent for residuals of left shoulder injury.

6. Entitlement to a total disability rating based on individual employability (TDIU), to include extraschedular consideration for TDIU.
 

REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Mary C. Suffoletta, Counsel 


INTRODUCTION

The Veteran had periods of active duty for training (ACDUTRA) and inactive duty for training (INACDUTRA) in the Army National Guard from March 1980 to December 2003, including periods of ACDUTRA from April 1980 to August 1980 and from September 9, 1991, to September 13, 1991.

These matters come to the Board of Veterans' Appeals (Board) on appeal from a February 2004 decision of the RO that, in pertinent part, denied a total disability rating based on individual unemployability (TDIU); from an August 2009 decision of the RO that, in pertinent part, declined to reopen claims for service connection for degenerative joint disease of the cervical spine and for degenerative joint disease of the lumbar spine, on the basis that new and material evidence had not been received; and from an August 2015 decision of the RO that, in pertinent part, denied a disability rating in excess of 20 percent for service-connected residuals of left shoulder injury. The Veteran timely appealed.

The requirement of submitting new and material evidence to reopen a claim is a material legal issue the Board is required to address on appeal, despite the RO's action. See Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2001); Barnett v. Brown, 83 F.3d 1380, 1383-1384 (Fed. Cir. 1996). As such, the issues are captioned as shown above on the title page.

In November 2016, the Veteran testified during a hearing before the undersigned at the RO.

In January 2017, the Veteran requested that his appeal be advanced on the docket due to financial hardship; and submitted proof of financial hardship in July 2017. The undersigned has granted the motion. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issue of entitlement to a TDIU, to include extraschedular consideration for TDIU, is addressed in the REMAND portion of the decision below; and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. In a July 2006 rating decision, the RO denied service connection for degenerative joint disease of the cervical spine. The Veteran did not appeal within one year of being notified.

2. Evidence associated with the claims file since the July 2006 denial, when considered by itself or in connection with evidence previously assembled, relates to an unestablished fact necessary to substantiate the claim for service connection for degenerative joint disease of the cervical spine.

3. In February 1999 and July 2006 rating decisions, the RO denied service connection for degenerative disc disease of the lumbar spine and for degenerative joint disease of the lumbar spine. The Veteran did not appeal within one year of being notified.

4. The evidence received since the RO's July 2006 denial of service connection for degenerative joint disease of the lumbar spine is cumulative.

5. The evidence supports a link between current degenerative joint disease of the cervical spine and residuals of left shoulder injury from the September 1991 injury the Veteran sustained in ACDUTRA.

6. Residuals of right shoulder injury were not manifested during ACDUTRA; and are not attributed to ACDUTRA, and are not related (causation or aggravation) to a service-connected disease or injury.

7. The Veteran's residuals of left shoulder injury have been manifested by pain, joint disease, and functional limitation of the left (minor) arm which more nearly approximates limited arm motion to midway between side and shoulder level; limited arm motion to within 25 degrees from the side, and ankylosis are not shown.


CONCLUSIONS OF LAW

1. The RO's July 2006 rating decision, denying service connection for degenerative joint disease of the cervical spine, is final. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 3.104(a), 20.302, 20.1103 (2016).

2. The evidence received since the RO's July 2006 denial is new and material, and the claim for service connection for degenerative joint disease of the cervical spine is reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156(a) (2016).

3. The RO's February 1999 and July 2006 rating decisions, denying service connection for degenerative disc disease of the lumbar spine and for degenerative joint disease of the lumbar spine, are final. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 3.104(a), 20.302, 20.1103 (2016).

4. The evidence received since the RO's July 2006 denial is not new and material, and the claim for service connection for degenerative joint disease of the lumbar spine is not reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156(a) (2016).

5. Degenerative joint disease of the cervical spine is proximately due to or a result of a service-connected disease or injury. 38 C.F.R. § 3.310 (2016).

6. Residuals of right shoulder injury were not incurred in or aggravated by ACDUTRA. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2016). 

7. Residuals of right shoulder injury are not proximately due to, the result of, or aggravated by service-connected disease or injury. 38 C.F.R. § 3.310 (2016).

8. The criteria for a disability rating in excess of 20 percent for residuals of left shoulder injury are not met. 38 U.S.C.A. § 1155 (West 2015); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5201 (2016).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). 

VA's duty to notify was satisfied by August 2008 and October 2009 letters. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). Each of the Veteran's claims decided on appeal has been fully developed and re-adjudicated by an agency of original jurisdiction after notice was provided. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). 

The Board concludes that VA's duty to assist has been satisfied. All available records identified by the Veteran as relating to each of his claims have been obtained, to the extent possible. The RO has obtained the Veteran's service treatment records, National Guard records, and outpatient treatment records; and has arranged for VA examinations in connection with certain claims decided on appeal, reports of which are of record and appear adequate. The opinions expressed therein are predicated on a substantial review of the record and consideration of the Veteran's complaints and symptoms. The Veteran has not identified, and the record does not otherwise indicate, any existing pertinent evidence that has not been obtained.

The Veteran has not been afforded an examination for his claimed residuals of right shoulder injury. Under the VCAA, VA is obliged to provide an examination when the record contains competent evidence that the claimant has a current disability or signs and symptoms of a current disability, the record indicates that the disability or signs and symptoms of disability may be associated with active service; and the record does not contain sufficient information to make a decision on the claim. 38 U.S.C.A. § 5103A(d) (West 2014). The evidence of a link between current disability and service must be competent. Wells v. Principi, 326 F.3d 1381 (Fed. Cir. 2003). As will be discussed below, there is no evidence of in-service disease or injury of the right shoulder, nor competent medical evidence suggesting a relationship between any current symptoms and ACDUTRA or service-connected disease or injury. Based on the facts of this case, VA has no duty to provide a VA examination or obtain a medical opinion, even under the low threshold of McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006).

During the hearing the undersigned clarified the issues, explained the concepts of service connection and secondary service connection and increased evaluations; and helped to identify any pertinent evidence that was outstanding that might substantiate the claims. The actions of the undersigned supplement VA's duties and comply with 38 C.F.R. § 3.103.

Given these facts, it appears that all available records have been obtained. There is no further assistance that would be reasonably likely to assist the Veteran in substantiating the claims. 38 U.S.C.A. § 5103A(a)(2).

II. Application to Reopen Claims for Service Connection

VA may reopen and review claims that have been previously denied if new and material evidence is submitted by or on behalf of the Veteran. 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156(a); see also Hodge v. West, 155 F.3d 1356 (Fed. Cir. 1998). 

Under 38 C.F.R. § 3.156(a), "new evidence" is existing evidence not previously submitted; "material evidence" is existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. Furthermore, new and material evidence is "neither cumulative nor redundant" of evidence of record at the time of the last prior final denial, and must "raise a reasonable possibility of substantiating the claim." 38 C.F.R. § 3.156(a).

New evidence will be presumed credible solely for the purpose of determining whether the claim has been reopened. Justus v. Principi, 3 Vet. App. 510, 513 (1992).

The Veteran filed a claim for service connection for injury to the spine in February 1998.

The evidence of record reveals that the RO denied service connection for degenerative disc disease of the lumbar spine in February 1999. Subsequently, in July 2006, the RO denied service connection for degenerative joint disease of the cervical spine, and denied service connection for degenerative joint disease of the lumbar spine.

The evidence of record at the time of the previous denial of the claims in July 2006 includes the Veteran's service treatment records, his National Guard records, his personnel records, VA examination reports, VA treatment records, and statements of the Veteran.

Clinical evaluation at the time of the Veteran's enlistment examination for ACDUTRA in March 1980 and at separation in July 1980 revealed a normal spine.

During the Veteran's ACDUTRA in September 1991, members of the Veteran's unit played touch football for physical training. As the Veteran went out for a pass, he dove to catch the ball and landed on his left shoulder, injuring it. When he stopped playing, his shoulder began to swell and bruise; he reported pain to the top of shoulder and left arm. Medical examination at the time revealed tenderness superiorly in the shoulder at about the acromioclavicular joint. X-rays were negative. The assessment was contusion of left shoulder. The Veteran was advised to continue hot packs, Ibuprofen in pharmacologic doses, and to rest the shoulder.

A National Guard record, which is undated, shows a history of ankylosing spondylitis, negative on physical examination; the Veteran was then qualified for retention. On a "Report of Medical History" completed by the Veteran in December 1993, he reported recurrent back pain. The examiner noted back pain on and off since September 1991, which kept the Veteran from doing sit-ups. Records dated in February 1995 show that the Veteran reported injuring his left shoulder and back while doing physical training in ACDUTRA. 

The report of an October 1998 VA (contract) examination reveals complaints of constant pain in the lower back, and occasional pain in the upper back and neck. The Veteran reported that he developed ulcerative colitis as a result of ankylosing spondylitis. X-rays of the lumbar spine suggested early changes of degenerative disc disease. The Veteran also reported the football injury in 1991, and that the injury resulted in neck and back pain. The Veteran reported that back X-rays taken at the time of the injury were okay. The Veteran reported developing unrelenting back pain, diagnosed as ankylosing spondylitis, in 1992. Following examination, the diagnosis in October 1998 was degenerative disc disease of L4-L5.

Based on this evidence, the RO concluded in February 1999 that treatment records concerning the football injury in September 1991 had not included comments concerning back problems or injury; and that the Veteran's degenerative disc disease of the lumbar spine neither occurred in nor was caused by ACDUTRA. The Veteran did not appeal, nor submit new and material evidence within one year of the decision. The February 1999 rating decision, therefore, became final.

National Guard records include a physical profile, dated in December 2002, which was permanent; the Veteran was limited from push-ups, sit-ups, and running. His medical conditions at the time included impingement of left shoulder with acromioclavicular joint arthritis and ankylosing spondylitis. Records show that these limitations precluded the Veteran from retraining and reclassification into any MOS (military occupational specialty), and subsequently he was discharged in May 2003.

VA records, dated in March 2004, show a medical history of ankylosing spondylitis diagnosed in 1992; and as the ulcerative colitis and ankylosing spondylitis flare together, cervical and sacroiliac joints were stiff in the morning.

During a February 2006 VA examination, the Veteran reported that he injured his neck and shoulder playing football in 1991. Current symptoms included a burning sensation from the cervical to lumbar spine, affecting the sciatic nerve. Pain also radiated from his neck to shoulder and down to hand and fingers. The Veteran also reported that his lumbar spine condition was related to the 1991 injury while playing football. Current symptoms included a dull achy pain that changed to a sharp pain and radiated down the leg to the knee, left greater than right. X-rays revealed degenerative changes of the cervical spine and lumbar spine. 

Following examination in February 2006, the examiner opined that it is at least as likely as not that degenerative joint disease of the cervical spine is caused by or the result of multiple factors-such as, occupation, weight, exercise history; and that the service-connected residuals of left shoulder injury may be a contributing factor of less than or equal to 25 percent. The examiner also opined that it is less likely than not that degenerative joint disease of the lumbar spine is caused by or the result of ACDUTRA.

Based on this evidence, the RO concluded in July 2006 that service treatment records show no back or neck problems or injuries at the time of the September 1991 shoulder injury; and that degenerative joint disease of the cervical spine and lumbar spine is less likely than not caused by or the result of service-connected disease or injury, or otherwise related to ACDUTRA. The Veteran did not appeal, nor submit new and material evidence within one year of the decision. The July 2006 rating decision, therefore, became final.

The Veteran again initiated claims for service connection for degenerative joint disease of the cervical spine and lumbar spine on July 17, 2008.

Evidence added to the record since July 2006 includes VA examination reports, outpatient treatment records, Social Security records, a hearing transcript, and lay statements. These records show ongoing treatment for degenerative joint disease of the cervical and lumbar spine. Social Security records show the onset of disability in March 2009; and reflect a primary diagnosis of inflammatory bowel disease, and a secondary diagnosis of disorders of back.

The report of a May 2009 VA examination reveals that the Veteran has a typical story of chronic impingement syndrome of the left shoulder, secondary to degenerative arthritis of the left acromioclavicular joint; and that he has limitation of motion. 

In November 2016, the Veteran testified that while doing some organized physical training in ACDUTRA, he went out for a pass and that the first point of contact was his left shoulder, and that "the neck was getting wrenched at the same time" and resulted in severe bruising. He was giving pain medication initially. The Veteran testified that X-rays later revealed two or three disks bulging, and showed a slight difference in height; and that he did do some physical therapy in the mid-1990's and took some medication. He testified that there were minor abnormalities, like the disks not lining up, which aggravated the nerve. With regard to the lumbar spine, the Veteran testified that he "could have twisted the spine" at the time of the September 1991 injury; and that he initially sought treatment for his lumbar spine in the mid-1990's. 

Cervical Spine

Here, the only new evidence consists of the Veteran's testimony that his "neck was getting wrenched at the same time" as his left shoulder injury in September 1991, and subsequent development of minor abnormalities of the cervical spine which required physical therapy. He is competent to offer statements of first-hand knowledge of his experiences. Given the presumed credibility, the additional evidence, when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim for service connection and is both new and material.

Under these circumstances, the Veteran's claim for service connection for degenerative joint disease of the cervical spine is reopened. 38 U.S.C.A. § 5108.


Lumbar Spine

In Shade v. Shinseki, 24 Vet. App. 110, 118-19 (2010), the Court held that new evidence would raise a reasonable possibility of substantiating the claim if when considered with the old evidence it would at least trigger VA's duty to assist by providing a medical opinion. With regard to degenerative disc disease and degenerative joint disease of the lumbar spine, the evidence of record has not triggered this duty here. 

None of the additional treatment records shows a relationship between the Veteran's current lumbar spine disability and ACDUTRA. 

The Veteran is not shown to be competent to establish a diagnosis, or to specify the diagnostic criteria of lumbar spine disabilities, to include arthritis; or to relate such disabilities to ACDUTRA or to a service-connected disease or injury. See 38 C.F.R. § 3.159(a)(1)-(2); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). He does not meet any of the three exceptions for competent lay evidence as listed under Jandreau. 

The Veteran previously reported back pain as starting in 1991; this evidence is not new, and pain alone does not constitute a disability. The possibility that the Veteran might have hurt his back at the same time as when he injured his left shoulder had been considered previously by the RO in the February 1999 and July 2006 decisions. Because the submitted evidence does not include competent evidence relating a current lumbar spine disability to any disease or injury in ACDUTRA, to include residuals of left shoulder injury, it is not new and material for purposes of reopening the claim.

Absent evidence of a plausible nexus between a current lumbar spine disability and ACDUTRA, or between a current lumbar spine disability and a service-connected disease or injury, the received evidence is not new and material. As new and material evidence has not been received, the claim for service connection for degenerative joint disease of the lumbar spine is not reopened.

III. Cervical Spine 

As the Board has determined that new and material evidence has been submitted, it is necessary to consider whether the Veteran would be prejudiced by the Board proceeding to a decision on the merits. In this case, the statement of the case provided the Veteran with the laws and regulations pertaining to consideration of the claim on the merits. The discussion in the statement of the case essentially considered the Veteran's claim on the merits. Accordingly, the Board finds that the Veteran would not be prejudiced by its review of the merits at this time. See Bernard v. Brown, 4 Vet. App. 384 (1993).

Generally, to establish entitlement to service connection, a Veteran must show: (1) a present disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

The Veteran's ACDUTRA in September 1991 was less than 90 days. Therefore, consideration of 38 C.F.R. §§ 3.307 and 3.309 and the attendant presumptions are not appropriate. See Biggins v. Derwinski, 1 Vet. App. 474, 477-78 (1991).

Regarding the Veteran's period of ACDUTRA in September 1991, there are neither complaints nor treatment nor diagnosis of any cervical impairment documented in service treatment records. 

National Guard records show complaints of left upper spinal column vertebrae as partially out of alignment in October 2002. The examiner at the time noted a history of ankylosing spondylitis.

X-rays taken of the cervical spine some years later revealed degenerative changes in February 2006. Although degenerative joint disease of the cervical spine has persisted, the Veteran is nevertheless not entitled to direct service connection because there is no competent evidence linking his current disability to any disease or injury during ACDUTRA.

The Board is within its province to make a determination as to whether the evidence supports a finding of service incurrence. See Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). As indicated above, the first credible showing of pertinent disability is many years after ACDUTRA with no competent evidence that the disability is in any way related to ACDUTRA.

The Veteran also seeks service connection for degenerative joint disease of the cervical spine, which he believes is associated with his service-connected residuals of left shoulder injury.

Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. 38 C.F.R. § 3.310(a).

However, VA will not concede that a nonservice-connected disease or injury was aggravated by a service-connected disease or injury unless the baseline level of severity of the nonservice-connected disease or injury is established by medical evidence created before the onset of aggravation, or by the earliest medical evidence created at any time between the onset of aggravation and the receipt of medical evidence establishing the current level of severity of the nonservice-connected disease or injury. The rating activity will determine the baseline and current levels of severity under the Schedule for Rating Disabilities and determine the extent of aggravation by deducting the baseline level of severity, as well as any increase in severity due to the natural progress of the disease, from the current level. See 38 C.F.R. § 3.310(a), (b), as amended effective October 10, 2006. 

A VA examiner in February 2006 reviewed the Veteran's medical history, and considered the Veteran as a reliable historian. The Veteran reported injuring both his neck and left shoulder playing football in September 1991. His current symptoms included a burning sensation from the cervical to lumbar spine, and affecting the sciatic nerve. Pain also radiated from his neck to his shoulder, and occasionally down to his hand and fingers. The Veteran took pain medication, and avoided activities that aggravated his neck. 

Following examination in February 2006, the examiner opined that it is at least as likely as not that degenerative joint disease of the cervical spine was caused by or the result of multiple factors-such as occupation, weight, exercise history; and that service-connected residuals of left shoulder injury may be a contributing factor of less than or equal to 25 percent. The examiner also noted that the degenerative joint disease of the cervical spine had a moderately severe functional impact, and noted that there has been progressive worsening since the September 1991 injury. 
 
When assessing the probative value of a medical opinion, the thoroughness and detail of the opinion must be considered. The opinion is considered probative if it is definitive and supported by detailed rationale. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000). A medical opinion that contains only data and conclusions is not entitled to any weight. "It is the factually accurate, fully articulated, sound reasoning for the conclusion, not the mere fact that the claims file was reviewed, that contributes probative value to a medical opinion." See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008).
 
The Board finds the February 2006 examination report to be persuasive in finding that degenerative joint disease of the cervical spine is, in part, likely due to or aggravated by the service-connected residuals of left shoulder injury. The February 2006 examiner reviewed the medical history and provided a rationale which considered whether the service-connected disability was a contributing factor for causation or aggravation of the Veteran's current disability; and indicated that there has been progressive worsening. The opinion is factually accurate, fully articulated, and contains sound reasoning. Therefore, the February 2006 opinion is afforded significant probative value. Nieves-Rodriguez, 22 Vet. App. at 304. 

Service connection for degenerative joint disease of the cervical spine is granted.


IV. Service Connection for Residuals of Right Shoulder Injury

As noted above, service connection is awarded for disability that is the result of a disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131.

Regarding the Veteran's period of ACDUTRA in September 1991, there are neither complaints nor treatment nor diagnosis of any right shoulder disability. There is no evidence of disease or injury of the right shoulder during ACDUTRA.

Moreover, the Veteran has reported, and the evidence clearly shows, an injury to the right shoulder post-service as the result of a March 2007 motorcycle accident. The Veteran subsequently underwent reconstructive surgery in August 2007 for a dislocated right shoulder.

Hence, the Veteran is not entitled to direct service connection because there is no competent evidence linking his current residuals of right shoulder injury to any disease or injury during ACDUTRA. As indicated above, the first credible showing of pertinent disability is many years after ACDUTRA with no competent evidence that the disability is in any way related to ACDUTRA.

In this case, the Veteran seeks service connection for residuals of right shoulder injury, which he believes is associated with his service-connected residuals of left shoulder injury.

VA records, dated in March 2007, show that the Veteran went to the Emergency Room for a right shoulder injury that occurred the day before while driving his motorcycle. At the time the Veteran reported that he was slowly going up an incline when his motorcycle stalled, causing him to tip on right side, and striking the right shoulder (lateral aspect) on ground. He complained of right shoulder pain and painful ranges of motion. Objective evaluation revealed mild swelling; there was no bruising or redness. There were limited ranges of motion due to pain. X-rays revealed no fracture or dislocation. The assessment was "contusion of right shoulder, consider rotator cuff injury." Records show that the Veteran underwent arthroscopic surgery in August 2007 for mini-open subacromial decompression with rotator cuff repair.

VA records of consultation with an orthopedic surgeon in May 2007 reveal bilateral arm symptoms. The surgeon noted a longstanding history of symptoms in the left arm, which the Veteran described as feeling of numbness. Frequently, the Veteran awoke during the night and moved his arm around, shaking it off and getting back to sleep. The surgeon noted that nerve conduction velocity and electromyograph studies of the Veteran's left arm have been done, and were completely within normal limits. The Veteran also described the March 2007 motorcycle accident, indicated that he fell and his motorcycle landing on his right shoulder. Following examination of each shoulder and arm, the surgeon diagnosed rotator cuff tear of right shoulder; and paresthesias of left arm, not likely secondary to his shoulder.

As noted above, generally, there is a presumption that persons seeking treatment will provide an accurate history so as to obtain appropriate care. The Veteran did not mention any "jolt" or "spasm" in his left shoulder or hand, either at the time of Emergency Room treatment in March 2007 or at the time of consulting with the orthopedic surgeon about his bilateral arm symptoms.

Rather, the Board notes that it was not until November 2009 when the Veteran contended that his left shoulder gave out while driving his motorcycle in March 2007, causing the motorcycle to stall, and resulting in the bike falling right and landing on his right shoulder. Likewise, in March 2010, the Veteran contended that while riding his motorcycle in March 2007 and coming to a stop, he had a "spasm" of his left hand, which just opened up and let the clutch stall. The Veteran then lurched forward, and hit the hard asphalt with his right shoulder. In October 2012, the Veteran contended that his left shoulder was "spasming out," and resulted in his losing control of motorcycle, falling on right shoulder.

The Veteran again testified in November 2016 regarding how his right shoulder injury was due to his other shoulder. He testified that he would "lose the clutch" and all the "nerve to pull that thing in;" and testified that it was like "a lightning bolt hit the left shoulder," and he "let go and to the right" he went, and "virtually destroyed" his right shoulder. He testified that he did not file a police report, and that he went to the hospital the next day.

The Board also notes that there are VA records, dated in June 2007, which reveal complaints of "jolt of pain" in left arm, which awakened the Veteran several times at night. Even assuming, without deciding, that the Veteran did suffer a spasm in his left hand or a jolt of pain in his left arm in March 2007, which caused him to let go of the clutch and stall the motorcycle and fall, injuring his right shoulder-in this case, there is no evidence that such left hand symptoms or paresthesias of left arm are associated with service-connected disease or injury, or with residuals of left shoulder injury. Moreover, the Veteran had been invited specifically in August 2008 to submit evidence to substantiate a claim for secondary service connection, and he did not do so. 
 
The Board is within its province to make a determination as to whether the evidence supports a finding of service incurrence. See Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). As indicated above, the first credible showing of pertinent disability is many years after ACDUTRA with no competent evidence that residuals of right shoulder injury are in any way related to a service-connected disease or injury.

In short, for the reasons and bases set forth above, the Board concludes that the evidence weighs against granting service connection for residuals of right shoulder injury, to include as secondary to a service-connected disease or injury. On this matter, the preponderance of the evidence is against the claim; the benefit-of-the-doubt rule does not apply, and the claim must be denied. 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

V. Increased Rating for Residuals of Left Shoulder Injury

Disability evaluations are determined by comparing a Veteran's present symptomatology with criteria set forth in VA's Schedule for Rating Disabilities, which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. 

In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, be expected in all instances. 38 C.F.R. § 4.21 (2016).

After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. § 4.3 (2016).

The Veteran's entire history is reviewed when making disability evaluations. Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 4.1. When a disability has undergone varying and distinct levels of severity during the appeal, it is appropriate to apply staged ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

VA regulations set forth at 38 C.F.R. §§ 4.40, 4.45, and 4.59 provide for consideration of functional impairment due to pain on motion when evaluating the severity of a musculoskeletal disability. If feasible, these determinations are to be expressed in terms of the degree of additional range-of-motion loss due to any weakened movement, excess fatigability, incoordination, or pain. DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Johnston v. Brown, 10 Vet. App. 80, 84-5 (1997); 38 C.F.R. § 4.59 (2016). Moreover, joint testing is to be conducted on both active and passive motion, in weight-bearing and non-weight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint. Correia v. McDonald, 28 Vet. App. 158, 170 (2016).

Diagnostic Code 5010 directs that arthritis due to trauma be rated as degenerative arthritis under 38 C.F.R. § 4.71a, Diagnostic Code 5003. Under that code, degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. When, however, the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a 10 percent evaluation is assignable for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added, under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 38 C.F.R. § 4.71a, Diagnostic Code 5003.

A 10 percent evaluation will be assigned where there is X-ray evidence of involvement of two or more major joints or two or more minor joint groups. A 20 percent evaluation will be assigned where there is X-ray evidence of involvement of two or more major joints or two or more minor joint groups, and there are occasional incapacitating exacerbations. The 10 and 20 percent evaluations based on X-ray evidence may not be combined with ratings based on limitation of motion. 38 C.F.R. § 4.71a, Diagnostic Code 5003. 

Additionally, the anti-pyramiding provision of 38 C.F.R. § 4.14 directs that the evaluation of the 'same disability' or, more appropriately in this case, the 'same manifestation' under various diagnoses is to be avoided. Indeed, in Esteban v. Brown, 6 Vet. App. 259 (1994), the Court held that, for purposes of determining whether a Veteran is entitled to separate ratings for different problems or residuals of an injury, without violating the prohibition against pyramiding, the critical element is that none of the symptomatology for any one of the conditions is duplicative of, or overlapping with the symptomatology of the other conditions.

The Board will consider not only the criteria of the currently assigned diagnostic codes, but also the criteria of other potentially applicable diagnostic codes.

Here, the Veteran is competent to testify on factual matters of which he has first-hand knowledge. Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). He is also competent to report symptoms of shoulder pain. Layno v. Brown, 6 Vet. App. 465, 469-71 (1994). He is competent to describe his symptoms and their effects on employment and daily activities.

Service connection has been established for residuals of left shoulder injury. The RO evaluated the Veteran's disability as 20 percent disabling under 38 C.F.R. § 4.71a, Diagnostic Code 5201. For rating purposes, a distinction is made between major (dominant) and minor musculoskeletal groups. In the instant case, the Veteran is right-handed; hence, his left shoulder is considered his minor upper extremity.

As previously noted, degenerative joint disease is evaluated on the basis of limitation of motion. 38 C.F.R. § 4.71a, Diagnostic Code 5003. 

Under Diagnostic Code 5201, a 20 percent evaluation is warranted for motion of the arm (minor) limited to shoulder level, or limited to midway between the side and shoulder level. A maximum 30 percent rating is assignable for motion of the arm (minor) limited to within 25 degrees from the side. 38 C.F.R. § 4.71a, Diagnostic Code 5201. 

The standard ranges of motion for shoulder abduction and forward elevation (flexion) are 180 degrees. 38 C.F.R. § 4.71, Plate I. Shoulder level is 90 degrees.

Here, the Veteran filed a claim for an increased disability rating for residuals of left shoulder injury on August 7, 2012.

During a May 2013 VA examination, the Veteran reported that he could no longer golf; and that his left shoulder went numb at times down to his fingertips. The examiner found no sensory loss on physical examination, and indicated that previous electromyographs of upper extremities were normal. Ranges of motion of the left shoulder were to 75 degrees on forward flexion, and to 65 degrees on abduction; pain was noted at the extremes of motion. After repetitive motion, the Veteran experienced loss of ranges of motion; forward flexion was limited to 65 degrees, and abduction was limited to 60 degrees. Contributing factors of functional loss included weakened movement, excess fatigability, and pain on movement. Tenderness was noted over the rotator cuff tendon. Motor strength on the left side was decreased. There was no ankylosis. Hawkins' impingement test and other specific tests for rotator cuff conditions were positive.

In July 2016, the Veteran reported no change in the condition of his left shoulder since the May 2013 examination.

In November 2016, the Veteran testified that, when reaching for something, he sometimes felt "a shot" in the shoulder or "a spike" or "electrical charge"; and that it was unpredictable when the shot or spike or electric charge would occur.

Here, the evidence shows that the Veteran's motion of the left arm has been limited by pain, at most, to approximately 65 degrees in forward flexion and to 60 degrees in abduction, which both are lower than shoulder level but higher than midway (45 degrees) between side and shoulder level. The Veteran also had reported pain in the left shoulder, and that such pain limited his movement. The evidence does not reflect that limited motion of the Veteran's left shoulder or arm meets the criteria for a disability rating in excess of 20 percent under Diagnostic Code 5201 at any time. The May 2013 examiner noted decrease in motion on repetitive use, and decrease in strength. The currently assigned 20 percent disability rating already compensates the Veteran for significant functional impairment, based on painful motion and weakness. Taking into account his lay assertions, particularly with respect to functional loss resulting from pain and weakness and other symptoms as contemplated by Deluca, the Board concludes that these symptoms meet the criteria for no more than the currently assigned 20 percent disability rating under 38 C.F.R. § 4.71a, Diagnostic Code 5201. The disability has been symptomatic and results in some dysfunction below shoulder level with pushing motion and with reaching.

The lay and medical evidence has not shown, however, that the Veteran's motion of the left arm approaches or approximates limitation to within 25 degrees from the side during any examination. 38 C.F.R. § 4.71a, Diagnostic Code 5201 (2016). Nor is there evidence of ankylosis of the left shoulder or arm. The Veteran can still move his left shoulder and arm, although limited by pain. Even with consideration of functional factors, the Board finds that an increased rating is not warranted. No other diagnostic code is applicable in this case. 

Here, the May 2013 examination report is considered adequate as it appropriately evaluated range of motion, pain, additional limitation of motion, and functional loss upon repetitive testing. The Board notes that the Veteran also had problems with his right shoulder; hence, neither shoulder is considered undamaged for comparison purposes. See Correia, 28 Vet. App. at 170.

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record.)


ORDER

The application to reopen the previously denied claim of service connection for degenerative joint disease of the cervical spine is granted.

New and material evidence has not been received; the claim for service connection for degenerative joint disease of the lumbar spine is not reopened.

Service connection for degenerative joint disease of the cervical spine is granted.

Service connection for residuals of right shoulder injury is denied.

A disability rating in excess of 20 percent for residuals of left shoulder injury is denied.


REMAND

As shown above, the Board has granted service connection for cervical spine disability, which has yet to be rated and which will change the combined rating. Hence, the TDIU issue is inextricably intertwined and must be deferred on remand for re-adjudication.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Implement the grant of service connect6ion for cervical disability.

2. After the above, address the issue of entitlement to TDIU. If the benefit sought is not fully granted, furnish a supplemental statement of the case (SSOC) and then return the appeal to the Board, if otherwise in order.

No action is required of the Veteran and his representative until they are notified by the RO or VA's Appeals Management Office (AMO).

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
H. N. SCHWARTZ
 Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs